**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| BYRON ESTRADA,<br><br>       Plaintiff,<br><br>     v.<br><br>REAL TIME RESOLUTIONS INC., et al.,<br><br>       Defendants. | Case No. 5:25-cv-02782-BLF<br><br>**ORDER GRANTING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Re: ECF Nos. 49, 51] |

Pro se Plaintiff Byron Estrada filed the first amended complaint against Defendants Real Time Resolutions, Inc. ("RTR") and Direct Default Services, LLC ("DDS") on September 29, 2025. ECF No. 45 ("FAC"). Defendants filed separate motions to dismiss. ECF Nos. 49 ("DDS Mot."), 51 ("RTR Mot."); *see also* ECF Nos. 60 ("DDS Reply"), 61 ("RTR Reply"). Mr. Estrada opposes both motions. ECF Nos. 58 ("Opp. to DDS"), 59 ("Opp. to RTR"). The motions are suitable for decision without oral argument. Civ. L.R. 7-1(b); *see also* ECF No. 62.

For the reasons below, the motions are GRANTED.

## I.    BACKGROUND

The FAC is difficult to follow, commingling factual allegations with conclusory assertions of ethical and legal violations purportedly committed by Defendants and third parties. From what the Court can gather from the face of the FAC, Mr. Estrada alleges as follows.

On September 14, 2006, Mr. Estrada obtained a loan in the amount of $70,900.00 ("Loan"), secured by a deed of trust on his home at 874 Lakewood Drive, Sunnyvale, CA 94089 ("Property") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Green Point Mortgage Funding, Inc. ("Green Point"). FAC ¶¶ 5, 18.

Mr. Estrada defaulted on the Loan sometime in September 2008. FAC ¶ 21. Mr. Estrada

received a letter dated July 14, 2009, stating that RTR had begun serving the Loan on July 13, 2009. *Id.* ¶ 19. On July 29, 2009, Mr. Estrada sent a letter to RTR requesting validation of the debt but did not receive a response. *Id.* ¶ 28.

Sometime in 2018, Mr. Estrada sent a qualified written request ("QWR") to RTR, requesting identification of the Loan beneficiary and the charge-off status of the debt; on August 3, 2018, RTR sent an "incomplete" QWR response. FAC ¶ 31. Mr. Estrada sent another QWR to RTR sometime in 2019, and received a QWR response from RTR on August 19, 2019, that failed to disclose the Loan beneficiary. *Id.* ¶ 32. On or around August 27, 2021, DDS, on behalf of RTR, recorded a Notice of Default and Election to Sell Under Deed of Trust against the Property. *Id.* ¶ 37.

Mr. Estrada retained Equity Legal LLP ("Equity Legal") to "see if something can be worked out with RTR," but RTR "did not want to negotiate." FAC ¶ 40. On May 9, 2022, DDS recorded a Notice of Trustee's Sale against the Property. *Id.* ¶ 41. The Notice of Trustee's Sale set a nonjudicial foreclosure sale for June 17, 2022. FAC Ex. 12. Following negotiations between Equity Legal and RTR, the foreclosure sale was postponed to July 18, 2022, to facilitate settlement discussions. FAC ¶¶ 47–48.

On July 1, 2022, Mr. Estrada received a proposed Temporary Payment Agreement from RTR, which he executed on the same day. FAC Ex. 8 ("TPA"); *see also* FAC ¶ 53. According to Mr. Estrada, he was "coerced" into signing the TPA to avoid foreclosure on the Property; he admits that by operation of the TPA he agreed to "waive all future claims against RTR." FAC ¶ 54.

Mr. Estrada initiated this action challenging enforcement of the TPA on November 27, 2024. ECF No. 1. The FAC alleges claims for (1) wrongful foreclosure, (2) breach of the covenant of good faith and fair dealing, (3) fraudulent misrepresentation, (4) quiet title, (5) declaratory relief, (6) rescission of contract, (7) intentional infliction of emotional distress, (8) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, (9) breach of fiduciary duty, (10) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, (11) violation of California Civil Code § 2924.17, (12) unfair business practices in

United States District Court
Northern District of California

violation of Cal. Bus. & Prof. Code § 17200, (13) negligent misrepresentation, and (14) promissory estoppel.  Mr. Estrada asserts thirteen of the fourteen claims (claims 1–8, 10–14) against RTR and ten of the fourteen claims (claims 1–5, 7, 9, 11–13) against DDS.

## II.   LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) "if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).  The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Upon granting a motion to dismiss, a court has discretion to allow leave to amend the complaint pursuant to Rule 15(a).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital*.  In Eminence Capital, the Ninth Circuit identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *See* 316 F.3d at 1052.

## III.   DISCUSSION

### A.  RTR's Motion

RTR argues that Mr. Estrada's fourteen claims against it must be dismissed because he validly waived and released them pursuant to the TPA.  RTR Mot. at 6.  In opposition, Mr. Estrada argues that the written release should not be enforced.  Opp. to RTR Mot. at 9–11.  A limitation-of-liability clause operates to extinguish any obligations covered by its terms unless it is

United States District Court
Northern District of California

unconscionable. *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1125 (N.D. Cal. 2017), *aff'd sub nom.*, *Darnaa, LLC v. Google LLC*, 756 F. App'x 674 (9th Cir. 2018); *accord Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 959 (2007). The TPA provides in relevant part:

> <u>Release of Claims by You</u>. As of the Effective Date, you, on behalf of yourself and your heirs, spouse(s), successors, and assigns, release and forever discharge (i) RTR[,] (ii) GSAA Trust 2007-Sl, and (iii) their respective principals, owners, predecessors, successors, assigns, affiliates (including any parent, subsidiary, or division), and their respective directors, officers, attorneys, employees, agents, representatives, and insurers (collectively, the "Released Parties") from and against any and all legal actions, suits, claims, liabilities, debts, accounts, promises, injuries, damages, attorney's fees, causes of action, and demands of every kind and character, known or unknown, in any jurisdiction, without limit (whether at law or in equity), arising out of, or in any manner related to the Account, the Note, the DOT, the Property, any modification of the Note, any collection activity by RTR, or any other known or unknown transactions or activities between/among you and the Released Parties from the beginning of the world through the Effective Date, including, without limitation, servicing, non-judicial foreclosure, collection, the mailing of letters, the sending of billing statements, credit reporting or other related activities.

TPA ¶ 3.

### 1. Enforceability of TPA Release

A plain reading of the TPA would shield RTR from liability unless Mr. Estrada can show that it is unenforceable. *May v. Google LLC*, No. 24-cv-01314-BLF, 2024 WL 4681604, at *6 (N.D. Cal. Nov. 4, 2024). Mr. Estrada argues that the TPA is void and cannot be enforced because it was procured under duress, arguing that he was forced to sign the TPA or otherwise face foreclosure of the Property. Opp to RTR at 12 ("The TPA was presented under immense time pressure: [T]he Plaintiff was without available counsel due to the impending 4th of July long weekend and court closures, placing him in the 'danger zone area' for the trustee sale scheduled for the following week."). Under the doctrine of economic duress, a party may avoid enforcement of a contract upon a showing of a wrongful act that was sufficiently coercive "to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." *Thompson Crane & Trucking Co. v. Eyman*, 123 Cal. App. 2d 904, 908 (1954). "A party pleading economic duress must have had no reasonable alternative to the contract it seeks to avoid." *CrossTalk Productions, Inc. v. Jacobson*, 65 Cal. App. 4th 631, 644, (1998). If a

United States District Court
Northern District of California

reasonable alternative was available, economic duress cannot be established.  *See id.*

Mr. Estrada appears to suggest that the TPA is void because it was procured against the backdrop of impending foreclosure proceedings and under a short time frame.  Neither of these circumstances, however, is sufficiently coercive to constitute duress.  Although the possibility of foreclosure of the Property was no doubt distressing, it is not duress for a party to move forward with the assertion of its rights.  *See*, *e.g.*, *Synnex Corp. v. Wattles*, No. 11-cv-01496-YGR, 2012 WL 5524953, at *5 (N.D. Cal. Nov. 14, 2012) ("While the law allows for a certain degree of subjectivity in determining whether a contract is voidable for duress, the century-old doctrine requires the party claiming duress to show *some wrongful act* on the part of the alleged perpetrator.").  And the FAC itself confirms that Mr. Estrada received the TPA on July 1, 2022, more than two weeks before the foreclosure sale was scheduled for July 18, 2022.  FAC ¶¶ 48, 53.  Moreover, he was represented by counsel at that time.  FAC ¶¶ 50–51.  On these facts, Mr. Estrada has not alleged sufficient facts showing duress.

Mr. Estrada also argues that the TPA cannot be enforced because RTR's attorney during the foreclosure (Genail M. Nemovi) was also the registered agent for service of process for DDS, contending that this created a "material" conflict of interest.  Opp. to RTR at 9.  Nowhere in his opposition, however, does Mr. Estrada explain what that conflict was, how it caused him to sign the TPA, or how that conflict made enforcement of the TPA unfair.  Mr. Estrada accordingly fails to come even close to alleging unconscionability, which requires a showing that the contract provision be "*both* procedurally and substantively unconscionable."  *In re iPhone Application Litig.*, No. 11-md-02250-LHK, 2011 WL 4403963, at *7 (N.D. Cal. Sept. 20, 2011).  Mr. Estrada's claims against RTR must accordingly be dismissed.  *See, e.g.*, *Kaufman & Broad– South Bay v. Unisys Corp.,* 822 F. Supp. 1468, 1474 (N.D. Cal. 1993).

### 2.  Scope of TPA Release

Having concluded that the release contained in the TPA is enforceable, the Court turns to whether it precludes Mr. Estrada's claims against RTR.  The scope of the release contained in the TPA is quite broad, providing that Mr. Estrada may not bring claims against RTR "arising out of, or . . . related to the Account, the Note, the [Deed of Trust], the Property, any modification of the

5

Note, any collection activity by RTR, or any other known or unknown transactions or activities between/among you and [RTR] from the beginning of the world through [July 1, 2022], including, without limitation, servicing, non-judicial foreclosure, collection, the mailing of letters, the sending of billing statements, credit reporting or other related activities." TPA ¶ 3. The Court turns to each of Mr. Estrada's thirteen claims against RTR, dismissing claims that (1) arise out of facts before July 1, 2022, and (2) fall within the scope of the release.

1. Wrongful Foreclosure: The wrongful foreclosure claim alleges that "on or about August 27, 2021, Defendants . . . initiated a fraudulent and willfully oppressive foreclosure process by recording a Notice of Default." FAC ¶ 60. This claim is based on facts before July 1, 2022, that fall within the subject matter of the release and is barred.

2. Breach of Covenant of Good Faith and Fair Dealing: The breach of implied covenant claim is based on the Deed of Trust and the initiation of foreclosure proceedings. FAC ¶ 63. This claim is based on facts before July 1, 2022, that fall within the subject matter of the release and is barred.

3. Fraud: The fraud claim alleges in part that RTR procured the TPA release by fraud. FAC ¶ 65. This claim cannot be barred by the TPA release, which is the subject matter of the claim.

4. Quiet Title: The quiet title claim is based on "Defendants' adverse claim via the Deed of Trust." FAC ¶ 67. This claim is based on facts before July 1, 2022, that fall within the subject matter of the release and is barred.

5. Declaratory Relief: The declaratory relief claim is based on Mr. Estrada's quiet title claim. Because the quiet title claim is barred, this claim is also barred.

6. Rescission of Contract: The claim for recission of contract alleges that the TPA was procured through economic duress. As explained above, the FAC fails to plead duress as a matter of law. The claim is accordingly barred.

7. Intentional Infliction of Emotional Distress: The intentional infliction of emotional distress claim alleges a "multi-year campaign of deception and coercion," that is,

United States District Court  
Northern District of California

foreclosure proceedings based on the Deed of Trust.  FAC ¶ 74A.  This claim is based on facts before July 1, 2022, that fall within the subject matter of the release and is barred.

8.  RESPA: The RESPA claim alleges "lender's failure to provide accurate information in the QWR."  FAC ¶ 76.  This claim is based on facts before July 1, 2022, that fall within the subject matter of the release and is barred.

9.  TILA: The TILA claim is based on the "[L]oan and transaction between [Mr. Estrada] and . . . RTR."  FAC ¶ 80.  This claim is based on facts before July 1, 2022, that fall within the subject matter of the release and is barred.

10.  Cal. Civ. Code § 2924.17: The section 2924.17 claim alleges that "Defendants recorded inaccurate foreclosure documents without competent and reliable evidence of their authority."  FAC ¶ 81.  This claim is based on facts before July 1, 2022, that fall within the subject matter of the release and is barred.

11.  Cal. Bus. & Prof. Code § 17200: The section 17200 claim is based on "Defendants' violations of RESPA, TILA, and California foreclosure statutes."  FAC ¶ 91.  Because those claims are barred, this claim is also barred.  Moreover, the claim is based on facts before July 1, 2022, that fall within the subject matter of the release.

12.  Negligent Misrepresentation: The negligent misrepresentation claim alleges that RTR failed "to conduct foreclosure proceedings lawfully" by "failing to verify its substitution and by acting under a conflict of interest."  FAC ¶ 110.  This claim is based on facts before July 1, 2022, that fall within the subject matter of the release and is barred.

13.  Promissory Estoppel: The promissory estoppel claim is based on RTR's "deficient QWR responses."  FAC ¶ 112.  This claim is based on facts before July 1, 2022, that fall within the subject matter of the release and is barred.

Twelve of Mr. Estrada's thirteen claims against RTR are accordingly covered by the TPA release and must be dismissed.

### 3.  Failure to State a Claim for Fraud

7

RTR argues that Mr. Estrada's fraud claim fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement.  RTR Mot. at 14.  The Court agrees.  Mr. Estrada's conclusory allegations that RTR fraudulently induced him to sign the TPA by misrepresenting his loan balance and concealing DDS's purported relationship with RTR are not sufficiently particularized because they fail to identify what was false or misleading about the loan balance or why the alleged relationship between Defendants was wrongful.

**B.  DDS's Motion**

DDS argues that Mr. Estrada's ten claims against it must be dismissed because the FAC fails to allege a factual or legal basis for relief and because none of the claims is pleaded with the requisite adequacy or particularity.  Mot. at 2–3.  The Court considers each claim in turn.

**1.  Wrongful Foreclosure**

The elements of a wrongful foreclosure claim under California law are: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104, (2011).

The FAC's first claim alleges that "Defendants lacked standing due to a void chain of title, fraudulent inflated balance and the foreclosure was prosecuted by an improperly substituted trustee operating under a disqualifying conflict of interest," causing him "financial loss, emotional distress, and coerced payments."  FAC ¶ 59.  DDS argues that the claim must be dismissed because the Notice of Default was rescinded over two years ago and Mr. Estrada accordingly cannot establish the first element, i.e., an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a deed of trust.  DDS Mot. at 6.  Mr. Estrada responds that a sale is not required where "the cancellation of the sale was itself procured through allegations of fraud, duress, and a material conflict of interest."  Opp. to DDS at 3.

The Court agrees with DDS that Mr. Estrada's wrongful foreclosure claim must be dismissed because the FAC has not alleged that a foreclosure sale has occurred, "which is a

8

United States District Court
Northern District of California

prerequisite for a wrongful foreclosure claim." *O'Connor v. Wells Fargo, N.A.*, No. 14-cv-00211-DMR, 2014 WL 4802994, at *8 (N.D. Cal. Sept. 26, 2014); *see also Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 961 (N.D. Cal. 2010) (dismissing wrongful foreclosure claim as premature where there was "no dispute that a foreclosure sale did not take place"). To the extent that Mr. Estrada argues that a plaintiff may overcome this requirement by alleging that the foreclosure sale was wrongfully cancelled, no such exception to the completed-sale requirement exists.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

The law implies in every contract a covenant of good faith and fair dealing, which "aims to effectuate the contract's purposes and promises, and to protect the parties' legitimate expectations based upon the terms of the contract." *Kelly v. Skytel Commc'ns, Inc.*, 32 F. App'x 283, 285 (9th Cir. 2002). "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372–73 (1992).

The FAC's second claim alleges that "Defendants breached [the covenant of good faith and fair dealing] by (1) [i]nitiating foreclosure without the legal right to do so; (2) [s]ystematically evading their duty to provide Plaintiff with basic information about his loan; and (3) leveraging the threat of an illegal sale to coerce Plaintiff into the TPA." FAC ¶ 63. DDS argues that the claim must be dismissed because Mr. Estrada does not allege that he entered a contract with DDS. DDS Mot. at 7. Mr. Estrada argues that DDS "misrepresents the nature of the relationship and the scope of its duties." Opp. to DDS at 5.

It is axiomatic that "a claim for breach of the covenant of good faith and fair dealing requires that [] a contract exist between the parties." *Karimi v. GMAC Mortg.*, No. 11-cv-00926-LHK, 2011 WL 3360017, at *4 (N.D. Cal. Aug. 2, 2011) (alteration in original). Mr. Estrada concedes that he "did not have a direct *loan* contract with DD[S]." Opp. to DDS at 5. Accordingly, Mr. Estrada "fails to state a claim for breach of covenant of good faith and fair dealing because [he] has not sufficiently pleaded the existence of a contract." *Yanik v. Countrywide Home Loans, Inc.*, No. 10-cv-06268-CAS-RZX, 2010 WL 4256312, at *4

(C.D. Cal. Oct. 18, 2010).

### 3. Fraudulent Misrepresentation

"To state a cause of action for fraud, a plaintiff must allege (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Williamson v. Reinalt-Thomas Corp.*, No. 11-cv-03548-LHK, 2012 WL 1438812, at *13 (N.D. Cal. Apr. 25, 2012) (internal quotation marks omitted) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1140–41 (C.D. Cal. 2003)).

The FAC's third claim alleges that "Defendants misrepresented . . . Direct Default's neutrality" because RTR's attorney during the foreclosure was also the registered agent for service of process for DDS. FAC ¶ 65B. DDS argues that this allegation of a conflict of interest is unsupported and does not support a claim for fraud. DDS Mot. at 8. Mr. Estrada argues that he states a "specific, non-conclusory claim regarding the integrity of the foreclosure process DD[S] administered." Opp. to DDS at 7.

The Court concludes that Mr. Estrada has failed to meet the heightened pleading requirement for fraud. *See* Fed. R. Civ. P. ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Specifically, Mr. Estrada "asserts fraud claims against both defendants, but fails to delineate which defendants committed which fraudulent acts." *Yanik*, 2010 WL 4256312, at *5. Apart from failing to allege sufficiently particularized facts as a basis for his fraud claim, Mr. Estrada's fraud claim must also be dismissed because he fails to allege any wrongdoing by DDS or any damages resulting therefrom.

### 4. Quiet Title and Declaratory Relief

To state a cause of action for quiet title, a plaintiff must allege: (1) a legal description of the property that is the subject of the action; (2) the title of the plaintiff and the basis upon which such title is asserted; (3) the adverse claims to the title of the plaintiff against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the plaintiff against the adverse claims. Cal. Civ. Proc. Code § 761.020. "The purpose of a quiet title action is to establish one's title against adverse claims to real property."

*Santos v. Countrywide Home Loans*, No. 09-cv-002642-WBD-DAD, 2009 WL 3756337, at *4 (E.D. Cal. Nov. 6, 2009). "Declaratory and injunctive relief are not independent claims[;] rather they are forms of relief." *Id.* at *5.

The FAC's fourth claim alleges that "Plaintiff holds legal title to the Property" and that "Defendants' adverse claim via the Deed of Trust and void foreclosure instruments clouds that title." FAC ¶ 67. The FAC's fifth claim alleges that declaratory relief is necessary to resolve the legal status of the Property. *Id.* ¶ 70. DDS argues that the claims must be dismissed because, "as a prior foreclosure trustee, does not . . . claim[] an interest in the Property." DDS Mot. at 8. Mr. Estrada responds that DDS's "conflict of interest[] is central to the 'cloud of title' alleged." Opp. to DDS at 8.

Mr. Estrada's quiet-title claim must be dismissed because he fails to allege that DDS claims a superior and adverse title to the Property. A "cloud" does not a case or controversy create. Dismissal of the underlying quiet-title claim resolves Mr. Estrada's claim for declaratory relief. *See, e.g.*, *Shaterian v. Wells Fargo Bank, N.A.,* 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011).

### 5. Intentional Infliction of Emotional Distress

The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Sams v. Cnty. of Riverside*, No. 17-cv-01848-SVW-SS, 2018 WL 1474333, at *10 (C.D. Cal. Mar. 26, 2018). "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Duronslet v. Cnty. of Los Angeles*, 266 F. Supp. 3d 1213, 1218 (C.D. Cal. 2017) (internal quotation marks and citation omitted).

The FAC's seventh claim alleges that "Defendants' multi-year campaign of deception and coercion was extreme and outrageous, intended to cause severe emotional distress, which Plaintiff suffered, requiring therapy." FAC ¶ 74A. DDS argues that the claim must be dismissed for failure to allege extreme and outrageous conduct. DDS Mot. at 8. Mr. Estrada concedes that

United States District Court
Northern District of California

"foreclosure . . . alone is generally not enough" but argues that "conduct involving fraudulent behavior, conflict of interest, and coercion can meet this heightened standard." Opp to. DDS at 10.

Nothing in the FAC even remotely approaches conduct exceeding "all bounds of that usually tolerated in a civilized community." *Duronslet*, 266 F. Supp. 3d at 1218. Mr. Estrada accordingly fails to state a claim for intentional infliction of emotional distress.

### 6. Breach of Fiduciary Duty

The elements of a cause of action for breach of fiduciary duty are (1) existence of a fiduciary duty, (2) breach of the fiduciary duty, and (3) damage proximately caused by the breach." *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (2011).

The FAC's ninth claim alleges that "[t]here was an undisclosed conflict of interest" because Ms. Nemovi "is the registered agent for [DDS] and also represented [RTR] in the foreclosure against [the Property]." FAC ¶ 78. DDS argues that dismissal is warranted because, as the foreclosure trustee in this transaction, DDS did not owe any fiduciary duties to Mr. Estrada. DDS Mot. at 8. Mr. Estrada responds that DDS owed him "a non-fiduciary duty of responsibility." Opp. to DDS at 11.

Mr. Estrada alleges no facts establishing a fiduciary duty on the part of DDS. The FAC makes no factual allegations that DDS acted as anything other than a trustee under a deed of trust and accordingly fails to state a claim for breach of fiduciary duty. *Perez v. Wells Fargo Bank, N.A.*, No. 11-cv-02279-JCS, 2011 WL 3809808, at *16 (N.D. Cal. Aug. 29, 2011) ("California courts have held, as a matter of law, that the trustee under a deed of trust 'is not a true trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed of trust.' (alteration in original) (quoting *Heritage Oaks Partners v. First American Title Ins. Co.,* 155 Cal. App. 4th 339, 345 (2007)).

### 7. California Civil Code Section 2924.17

Section 2924.17 of the California Civil Code requires that any covered "notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure . . . be accurate and complete and supported by

United States District Court
Northern District of California

competent and reliable evidence." Cal. Civ. Code § 2924.17(a). "Technical non-compliance is insufficient to state a cause of action; a plaintiff must allege a material violation of the statute." *Smith v. Nationstar Mortg. LLC*, No. 18-cv-05612-YGR, 2019 WL 1745121, at \*6 (N.D. Cal. Apr. 18, 2019).

The FAC's eleventh claim alleges that "Defendants recorded inaccurate foreclosure documents without competent and reliable evidence of their authority or the debt's accuracy." FAC ¶ 81. DDS argues that section 2924.17 imposed no affirmative duties on DDS as the trustee. DDS Mot. at 9. Mr. Estrada responds that DDS "cannot insulate itself from liability when it is an active participant in the alleged fraudulent scheme through a material conflict of interest." Opp. to DDS at 12.

Section 2924.17 does not create a duty for trustees to independently verify loan documents or review a servicer's data as Mr. Estrada appears to suggest. *See Lucioni v. Bank of Am., N.A.*, 3 Cal. App. 5th 150, 163 (2016). Mr. Estrada's claim thus fails as a matter of law.

### 8. California Business and Professional Code Section 17200

"Unlawful business activity proscribed under section 17200 includes anything that properly be called a business practice and that at the same time is forbidden by law." *Farmers Ins. Exchange v. Sup. Ct.*, 2 Cal. 4th 377, 383 (1992) (internal quotation marks and citation omitted). The Court agrees with DDS that Mr. Estrada fails to plausibly allege any unlawful conduct, and that the FAC's twelfth claim for unlawful business practices under section 17200 fails.

### 9. Negligent Misrepresentation

The elements of a cause of action for negligent misrepresentation under California law are: (1) "The defendant must have made a representation as to a past or existing material fact"; (2) "The representation must have been untrue"; (3) "Regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true"; (4) "The representation must have been made with the intent to induce plaintiff to rely upon it"; (5) "The plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation"; and (6) "[T]he plaintiff must have sustained damage." *Friedman v. Merck & Co.*,

13

107 Cal. App. 4th 454, 476 (2003) (citation omitted).

Nonjudicial foreclosure sales "are governed by a comprehensive statutory scheme. This scheme, which is found in Civil Code sections 2924 through 2924k, evidences a legislative intent that a sale which is properly conducted constitutes a final adjudication of the rights of the borrower and lender." *Royal Thrift & Loan Co. v. County Escrow, Inc.*, 123 Cal. App. 4th 24, 32, (2004) (internal quotation marks and citation omitted). Section 2924(d) "renders as California Civil Code section 47 'privileged communications' the 'mailing, publication, and delivery' of foreclosure notices and 'performance' of foreclosure procedures. The section 2924(d) privilege extended through California Civil Code section 47 applies to tort claims other than malicious prosecution." *Cisneros v. Instant Cap. Funding Grp., Inc.*, 263 F.R.D. 595, 605 (E.D. Cal. 2009) (first quoting Cal. Civ. Code § 47, then quoting Cal. Civ. Code § 2924(d)). "[A]bsent a showing of maliciousness, a trustee's executing its obligations under the deed of trust are protected under section 2924(d) and section 47." *Lundy v. Selene Fin., LP*, No. 15-cv-05676-JST, 2016 WL 1059423, at *5 (N.D. Cal. Mar. 17, 2016).

The FAC's thirteenth claim alleges that DDS "owed Plaintiff a duty of care to conduct foreclosure proceedings lawfully" and "breached this duty by failing to verify its substitution and by acting under a conflict of interest, directly causing Plaintiff's damages." FAC ¶ 110. DDS argues that Mr. Estrada's claim is foreclosed because the foreclosure documents at issue constitute privileged communications under California Civil Code § 2924(d). Mr. Estrada argues that the privilege does not apply where "the trustee's actions exceed its limited, ministerial role." Opp. to DDS at 14.

Mr. Estrada's claim for negligent misrepresentation is squarely foreclosed by section 2924(d), as the predicate wrongdoing consists entirely of sending statutorily required communications in connection with nonjudicial foreclosure proceedings. Mr. Estrada has failed to plead any factual allegations showing that DDS exceeded its ministerial role, acted maliciously, or otherwise demonstrated bad faith. Indeed, the only factual allegation Mr. Estrada martials in support of his position that the privilege does not apply is the same alleged "conflict of interest" stemming from Ms. Nevomi's representation. *See id.* Contrary to Mr. Estrada's suggestions to

the contrary, Ms. Nevomi's limited engagement with Defendants does not alone give rise to maliciousness or otherwise displace the privilege. Because the privilege clearly encompasses the factual predicate to Mr. Estrada's negligent misrepresentation claim, the FAC's thirteenth claim must be dismissed.

### C. Leave to Amend

Defendants both argue that the Court should dismiss the FAC with prejudice. RTR Mot. at 22; DDS Mot. at 12. Defendants have not shown that Mr. Estrada has acted in bad faith or unduly delayed during these proceedings, nor have they demonstrated any prejudice arising from the Court granting leave to amend. The Court will accordingly grant leave to amend the deficiencies identified in this order except to the extent that amendment would be futile.

With respect to Mr. Estrada's claims against RTR, the existence of a valid release provision in the TPA renders amendment futile as to the covered claims. As explained above, twelve of the thirteen claims against RTR fall within the scope of the release, and the Court accordingly will dismiss those claims without leave to amend. With respect to Mr. Estrada's fraud claim against RTR, the Court will grant leave to amend to provide Mr. Estrada with the opportunity to adduce detailed factual allegations setting forth with particularly the alleged wrongful conduct by RTR and resulting damages. Amendment will be limited to allegations of fraudulent conduct that induced Mr. Estrada to enter into the TPA.

With respect to Mr. Estrada's claims against DDS, DDS's status as trustee under a deed of trust renders amendment futile as to claims based on purported breaches of duties that DDS simply did not owe to Mr. Estrada. The Court will accordingly dismiss Mr. Estrada's claims for breach of fiduciary duty, violation of California Civil Code section 2924.17, and negligent misrepresentation without leave to amend. Moreover, because the Court dismisses Mr. Estrada's claims for wrongful foreclosure and breach of the implied covenant of good faith and fair dealing for failure to allege fundamental elements of the claims (namely, the existence of a foreclosure sale or contract), the Court will dismiss those claims without leave to amend as well. While the Court has serious reservations that Mr. Estrada will be able to cure the serious deficiencies in his other claims against DDS, it will grant leave to amend as to his remaining six claims since they could

United States District Court
Northern District of California

theoretically be cured.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) RTR's motion to dismiss is GRANTED.  Counts 1, 2, 4, 5, 6, 7, 8, 10, 11, 12, 13, and 14 against RTR are DISMISSED WITHOUT LEAVE TO AMEND.  Count 3 against RTR (fraud) is DISMISSED WITH LEAVE TO AMEND.

(2) DDS's motion to dismiss is GRANTED.  Counts 1, 2, 9, 11, and 13 against DDS (wrongful foreclosure, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, California Civil Code section 2924.17, and negligent misrepresentation, respectively) are DISMISSED WITHOUT LEAVE TO AMEND.  Counts 3, 4, 5, 7, and 12 against DDS are DISMISSED WITH LEAVE TO AMEND.

(3) Mr. Estrada SHALL file a second amended complaint within fourteen days of the date of this order.  Amendment shall be limited to addressing the deficiencies identified in this order.  No new claims or parties may be added without leave of the Court.

(4) This order terminates ECF Nos. 49, 51.

Dated:  February 11, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California